UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LOUIS and KAREN METRO FAMILY, LLC, and SOUTHERN OHIO PIZZA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LAWRENCEBURG CONSERVANCY DISTRICT, and CITY OF LAWRENCEBURG, <br><br> Defendants. | 4:06-cv-177-WGH-DFH |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

### Introduction

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Defendants' Motion for Summary Judgment filed November 30, 2007 (Docket Nos. 34-37, 40) and Plaintiffs' Motion for Partial Summary Judgment filed November 30, 2007 (Docket Nos. 38-39, 41-43).[1]

### Background

Plaintiff Louis and Karen Metro Family, LLC ("Metro") is an Ohio LLC owned and operated by Louis and Karen Metro, who are both residents of Ohio. (First Amended Complaint ¶ 1). Plaintiff Southern Ohio Pizza, Inc. ("SOP") is an

---

[1] In their Case Management Plan filed March 30, 2007, the parties consented to Magistrate Judge jurisdiction in this case. (Docket No. 15). District Judge David Frank Hamilton entered an Order of Reference on April 3, 2007. (Docket No. 16).

Ohio corporation. (*Id.* ¶ 2). Defendant Lawrenceburg Conservancy District ("LCD" or "District") is a conservancy district created pursuant to Indiana statutes. (*Id.* ¶ 3). Defendant City of Lawrenceburg ("City") is a municipality located in Dearborn County, Indiana. (*Id.* ¶ 4).

In 2000, the City and LCD intended to begin a project known as the Westside Flood Protection Project (the "Levee Project"), which involved construction of a levee. (Affidavit of Charles F. McNimery ("McNimery Aff.") ¶ 3). Funding for the Levee Project was approved on December 21, 2000. [*Id.* ¶ 4). Part of the Levee Project included taking a parcel of land (the "Property") owned by Metro to be used for the construction of the levee. (*Id.* ¶ 3). In 2001, LCD notified Metro that LCD intended to acquire, through eminent domain, property located at 8-12 Beilby Road in Lawrenceburg, Indiana, for the Levee Project. (Affidavit of Louis Metro ("Metro Aff.")).[2]

On March 21, 2001, LCD sent Metro an acquisition offer for the Property. (Defendants' Motion for Summary Judgment at Ex. 11 ("Acquisition Offer")). The Acquisition Offer stated that LCD offered Metro $417,000.00 for the Property. (*Id.*) On October 31, 2001 the LCD and Metro executed an agreement for the purchase of the Property (the "Purchase Agreement"). (First Amended Complaint at Ex. A).

---

[2]At that time, Metro also owned a three bay commercial building on the property. (Metro Aff. ¶ 3). SOP leased one of the available spaces in that building and operated a Domino's Pizza franchise store at that location. (*Id.*) Both of the other leasable spaces were likewise occupied by tenants.

Under the Purchase Agreement, Metro agreed to convey land to LCD in exchange for $417,000.00. (First Amended Complaint at Ex. A). Paragraph 2 of the Purchase Agreement contained the following provision:

> 2. At the time of closing, which shall occur on or before November 30, 2001, District shall execute an irrevocable Option in favor of Metro wherein Metro shall have the right to purchase 0.827 acres of the real estate described in Exhibit A and the adjoining 0.555 acres (formerly part of the Taylor property) for a purchase price of **Two Hundred Sixty-Nine Thousand Four Hundred Ninety ($269,490.00) Dollars**, which Option shall specify that the purchase shall be subject to a new easement in favor of District for the location, repair, maintenance and replacement of its facilities to be constructed on said real estate; a new easement in favor of City for the location, repair, maintenance and replacement of its new pumping station to be constructed on said real estate; existing easements for roads in favor of the State of Indiana; existing flowage easements in favor of the United States of America; other easements of record; and riparian rights of Tanner's Creek, and shall be exercisable for a period of **eighteen (18) months** commencing with the date written notice of Substantial Completion of the District's facilities is given by District to Metro by registered mail, certified mail, acknowledged facsimile, or acknowledged email transmission. The Option shall further stipulate that the property be excavated and left by the District in a reasonable manner to facilitate Metro's plans to rebuild a facility.

(*Id.*) At the time of the Purchase Agreement, LCD and the City intended to use the Property for the construction of a levee for the Levee Project. (McNimery Aff. ¶ 3). The Purchase Agreement contemplated an 18-month time frame in which the levee would be built. To that end, the Purchase Agreement provided for temporary relocation expenses, including temporary lease premiums, to be paid to SOP, and included an option for Metro to repurchase the property ("the Option") at the conclusion of the Levee Project. (First Amended Complaint at Ex. A).

Metro conveyed the Property to LCD, by deed on November 30, 2001. (Affidavit of Barbara Kaffenberger ("Kaffenberger Aff."); *see also* Defendants' Motion for Summary Judgment at Ex. 6 ("Warranty Deed")). Metro's attorneys prepared the deed conveying the Property from Metro to LCD. (*See* Warranty Deed). There has been no evidence presented by any party that suggests that the Option referred to in the Purchase Agreement was drafted and presented to Metro at the time of closing.

SOP relocated its Domino's Pizza to a new location in Lawrenceburg. (Metro Aff. ¶¶ 6, 8). And, SOP specifically negotiated an "early termination of lease" provision with its new landlord contemplating the temporary nature of the agreement between Metro and LCD. (*Id.* ¶ 8).

On January 28, 2002, a Resolution to Withdraw from the Levee Project was passed by the City Council for the City, which withdrew the funding for the project. (McNimery Aff. ¶¶ 5-6; Defendants' Motion for Summary Judgment at Ex. 9 ("Resolution to Withdraw")). The stated reason for the termination of the funding for the Levee Project was that the amount of acreage that would be made available for commercial development along the Ohio River was ultimately estimated at less than one-half of the original estimates. (McNimery Aff. ¶ 6). This was due to the original estimates not taking into consideration existing power lines, retention ponds, 250 feet rights-of-way on both sides of a proposed road, and green spaces required by the Army Corps of Engineers. (*Id.*) The original estimate of acreage freed up for development was approximately 550 acres, and

after taking into consideration the above mentioned factors, the net acreage for development became approximately 170 acres. (*Id.*) The Lawrenceburg City Council did not feel that the Project was economically feasible since the cost of the Levee Project was estimated to cost between $35 and $40 million dollars. Thus, funding for the Levee Project was terminated. (*Id.*; Resolution to Withdraw).

Once it became clear that LCD was not going to construct a levee on the Property, Metro repeatedly and continuously attempted to contact LCD and/or its representatives regarding the status of the Levee Project and Metro's Option. (*See* Metro Aff. at Ex. B). For over a year, LCD completely ignored Metro's calls and letters. (Metro Aff. ¶ 10). On August 31, 2005, LCD responded to Plaintiffs that LCD had "abandoned its plans to construct the levee contemplated by the Agreement." (*Id.* ¶ 11). After repeated attempts to follow up on the Option, Metro finally received a letter from counsel for LCD on May 16, 2006, explaining that the Option was not exercisable because LCD had chosen not to build the levee. (*Id.* ¶ 12).

On August 2, 2006, counsel for LCD notified Plaintiffs that the Property was being transferred to the City pursuant to an Interlocal Agreement ("IA") entered into by LCD and the City (Metro Aff. at Ex. C), and that a park was to be built on the property. (*Id.* ¶ 13). Paragraph 4 of the IA purports to transfer LCD's rights and obligations in the Agreement to the City. LCD and/or the City continued to refuse to permit Metro to exercise its Option to repurchase the Property. *(Id. ¶ 14).*

Metro has since learned that the City is now planning to use the property for the construction of a bridge. (Metro Aff. at Ex. D).

In late 2006, Plaintiffs filed suit claiming that Defendants "refused to allow Metro to exercise its Option." (First Amended Complaint ¶ 31). Plaintiffs asserted claims of breach of contract, fraud, and promissory estoppel and also argued for punitive damages. (First Amended Complaint).

Defendants filed their Motion for Summary Judgment arguing that Plaintiffs' breach of contract claim is barred by the doctrine of merger of deed. Defendants also argue that, in the alternative, the contract is unambiguous and that any option to repurchase the Property was subject to the condition precedent of building the levee; that Plaintiffs' fraud claim must be dismissed because fraud cannot be based on a future promise; and that government entities are usually not subject to claims of promissory estoppel. Plaintiffs filed their Motion for Partial Summary Judgment claiming: that the contract is ambiguous, must be construed in favor of Plaintiffs, and that parol evidence merits a finding in favor of Plaintiffs; that the doctrine of merger of deed does not bar recovery; and that Plaintiffs' promissory estoppel claim is warranted because of Plaintiffs' detrimental reliance.

### Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The motion should be

granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## **Analysis**

In ruling on these cross-motions for summary judgment, the Court must make three determinations:

(1)  Is Plaintiffs' contract claim viable given Defendants' assertion that it is barred by the doctrine of merger by deed?

(2)  Does Plaintiffs' fraud claim fail because it is based on a future promise?

      (3)      Do Plaintiffs have a viable claim of promissory estoppel given Defendants' status as a government entity?

## 1. Indiana Law Applies to this Dispute

As an initial matter, the Court must examine which state's laws apply to this dispute. This is a suit based on the Court's diversity jurisdiction. While a federal court sitting in diversity jurisdiction shall apply its own procedural laws, it must apply the substantive laws of the state in which it sits. *First Nat. Bank and Trust Corp. v. American Eurocopter Corp.,* 378 F.3d 682, 689 (7th Cir. 2004). The Court must, therefore, apply Indiana substantive law. However, '[i]f the laws of more than one jurisdiction arguably are in issue, *Erie* also requires a federal court to apply [the forum] state's choice of law rules." *Jean v. Dugan,* 20 F.3d 255, 260-61 (7th Cir. 1994). Thus, the Court must apply Indiana's choice of law rules. Here, the parties agree, and the Court concurs, that Indiana's choice of law rules clearly call for the application of Indiana law to this dispute.

## 2. Plaintiffs' Breach of Contract Claim Fails

Defendants argue that the Option to repurchase the Property was extinguished by the doctrine of merger by deed. When examining contracts for the purchase of real property, Indiana courts have adopted the doctrine of merger by deed which states that "[i]n the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in performance thereof." *Thompson v. Reising,* 51 N.E.2d 488, 491 (Ind.Ct.App. 1943). The Court in *Reising* further explained that any existing

contracts between the parties, "if not carried forward into the deed, are extinguished thereby, and no action lies on the contract." *Id.* An exception to this general rule applies, however, where the contract creates rights that are "collateral to and independent of the conveyance." *Williams v. Younginer,* 851 N.E.2d 351, 356-57 (Ind.Ct.App. 2006)(quoting *Reising,* 51 N.E.2d at 488). These "collateral" rights are generally rights not having to do with title, possession, quality, or emblements of the land conveyed. *Younginer,* 851 N.E.2d at 357. "Collateral and independent rights or obligations are permitted to survive the deed because their performances are not necessary to the conveyance of the real estate; thus, there is no need to merge them into the contract." *Id.*

Here, Plaintiffs do not allege that the deed was conveyed because of a mistake and, as discussed below, Plaintiffs' allegations of fraud fail. Consequently, because the Option was an existing contract between the parties that was not carried forward in the deed, the only issue to be determined is whether or not the Option still survives because it was a collateral undertaking. Indiana courts have not addressed this issue. However, it is clear that the Option referenced in the parties' Purchase Agreement did not create collateral and independent rights. The Option created rights that dealt with both the title and quality of the land conveyed. By being granted the option to repurchase the Property, Metro would be granted a right that affected title to the Property. The title would be encumbered by a right to repurchase the Property upon completion of the Levee Project. Additionally, the Option created rights that affected the

quality of the land conveyed by requiring "that the property be excavated and left by the District in a reasonable manner to facilitate Metro's plans to rebuild a facility."[3]  Because the Option created such rights, it was not a collateral undertaking, and the Option was extinguished upon conveyance of the deed. Defendants' Motion for Summary Judgment seeking dismissal of Plaintiffs' breach of contract claim is **GRANTED.**

3.  **Plaintiffs Have Not Asserted Facts Sufficient to Establish a Claim of Fraud**

Defendants' next argument is that Plaintiffs have failed to demonstrate facts sufficient to establish fraud.  In Indiana, the elements of an actual fraud claim include:

> (1) a material representation of past or existing fact which
> (2) was false,
> (3) was made with knowledge or reckless ignorance of its falsity,
> (4) was made with the intent to deceive,
> (5) was rightfully relied upon by the complaining party,
> (6) proximately caused injury to the complaining party.

*Bilimoria Computer Systems, LLC v. America Online, Inc.,* 829 N.E.2d 150, (Ind.Ct.App. 2005).  Furthermore, "actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed."  *Id.*  In this case, Plaintiffs claim that LCD promised to allow Metro the option to repurchase the Property at issue in this suit

---

[3] The Court also notes that it appears clear from the Purchase Agreement that the parties contemplated the effect of the doctrine of merger by deed.  The Purchase Agreement states that an irrevocable option would be executed by LCD at closing.  It appears clear from this language that the parties knew that the Purchase Agreement would not survive conveyance of the deed and that a new option would need to be executed at the same time that the deed was conveyed.

and then reneged on the promise. The facts alleged here are exactly the type of broken promise that does not give rise to a cause of action sounding in actual fraud. Defendants' Motion for Summary Judgment seeking dismissal of Plaintiffs' fraud claim is **GRANTED.**

### 4. Plaintiffs' Equitable Estoppel Claim Survives

Defendants also argue that Plaintiffs' equitable estoppel claim must fail because, in Indiana, equitable estoppel is a doctrine that generally does not apply to government entities. Defendants are correct that Indiana courts have concluded that government entities are, as a general matter, not subject to claims of equitable estoppel. *Equicor Development, Inc. v. Westfield-Washington Tp. Plan Com'n,* 758 N.E.2d 34, 39 (Ind. 2001). However, equitable estoppel of government entities is appropriate in certain situations. When the party has detrimentally relied on the governmental entity's affirmative assertion or on its silence where there was a duty to speak, equitable estoppel is an available remedy. *Id.*

Plaintiffs, in this case, have asserted facts which support their claim of equitable estoppel. The elements of an equitable estoppel claim include: (1) a representation or concealment of a material fact; (2) made with knowledge of the fact and with the intention that the other party act upon it; (3) to a party ignorant of the fact; and (4) which induces the other party to rely or act upon the fact to his detriment. *Clark v. Crowe,* 778 N.E.2d 835, 840 (Ind.Ct.App. 2002). "Generally, equitable estoppel involves a misrepresentation and detrimental reliance, but is not strictly limited to circumstances involving an actual false representation or

concealment of existing fact." *Roberts v. ALCOA, Inc.,* 811 N.E.2d 466, 475 (Ind.Ct.App. 2004).  Whether conduct is sufficient to support a claim of equitable estoppel is largely dependant upon the facts and circumstances of each particular case.  *Liberty Nat. Bank & Trust Co. v. Payton,* 602 N.E.2d 530, 534 (Ind.Ct.App. 1992).

Plaintiffs allege that LCD made two interrelated specific representations of material fact – specifically, that a levee would be built upon land owned by Metro, and that at the completion of the Levee Project, Metro would be allowed to repurchase the Property that was to be conveyed to the LCD.  While the two representations are not representations of existing facts, the *Roberts* case does indicate that the doctrine of equitable estoppel is not "strictly limited" to circumstances involving an "actual" false representation or a "concealment of existing fact."  Therefore, the first argument of the doctrine of equitable estoppel is met here.

It can also reasonably be inferred that LCD made these two representations with knowledge of these facts, and with the intention that Metro act upon them.  The third element of promissory estoppel can be satisfied in this case because it can reasonably be inferred that Metro was ignorant of these facts – that a levee was to be built and that the Option would be granted – until the representations were actually made by LCD.

Finally, viewing the facts in the light most favorable to Plaintiffs, there may have been detrimental reliance in this instance.  Plaintiffs allege that they relied

on promises made by LCD to their detriment in two ways. Plaintiffs argue that Metro would have never sold the Property had there been no Levee Project and no Option to repurchase the Property, and Plaintiffs claim that they entered into economically less attractive short-term lease agreements with the belief that they would be able to repurchase the Property as soon as the levee was constructed. These allegations are sufficient to demonstrate detrimental reliance, which is a key requirement for a successful equitable estoppel claim against a government entity.

Additionally, Plaintiffs have raised sufficient issues of fact concerning the other elements of their equitable estoppel claim to survive Defendants' Motion for Summary Judgment. Plaintiffs argue that they were left in the dark about the fact that the Option to repurchase the Property would be extinguished if no levee was built. According to Plaintiffs, LCD threatened to begin eminent domain proceedings against Metro in order to obtain the Property to build a levee. There have been no facts plead that suggest that at the time of the Purchase Agreement LCD stated some other "public purpose" for obtaining the Property. And, the terms of the Purchase Agreement and the Option to repurchase the Property contemplate no other reason for acquisition of the Property but for the creation of a levee. Given the focus on the creation of a levee, it was reasonable for Plaintiffs to conclude that: (1) a levee was going to be built; (2) that Metro was going to get to repurchase the Property once the levee was built; and (3) that if the Levee Project fell through, Metro would still have the option to repurchase the Property

because the very reason that the LCD wanted the property would then cease to exist.  If LCD's argument is that Metro never had the right to repurchase the Property in the event that the Levee Project fell through, then LCD clearly concealed that fact from Metro.  Such concealment, along with Metro's detrimental reliance, gives rise to Plaintiffs' equitable estoppel claim.  Defendant's Motion for Summary Judgment on this matter is, therefore, **DENIED.**

## Conclusion

For the reasons outlined above, Defendants' Motion for Summary Judgment is **GRANTED, in part, and DENIED, in part.**  Plaintiffs' Motion for Partial Summary Judgment is **DENIED.**  Plaintiffs' claim of equitable estoppel remains for trial.

**SO ORDERED.**

**Dated:**  March 5, 2008

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Richard A. Butler
rabutler9@comcast.net

Jeanette N. Dannenfelser
THE WOLFE PRACTICE, LPA
jdannenfelser@twplaw.com

William C. Moyer
LORCH & NAVILLE, LLC
wmoyer@lorchnaville.com

Joseph Wilber Votaw III
VOTAW & KISOR
josephvotaw@earthlink.net