UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

LOUIS and KAREN METRO FAMILY, LLC, and )
SOUTHERN OHIO PIZZA, INC.,                        )
                                                                       )
                                   Plaintiffs,                      )
                                                                       )
                        v.                                            )          4:06-cv-177-WGH-DFH
                                                                       )
LAWRENCEBURG CONSERVANCY DISTRICT,   )
and CITY OF LAWRENCEBURG,                       )
                                                                       )
                                   Defendants.                   )

# ENTRY ON CROSS-MOTIONS TO RECONSIDER

## Introduction

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge,[1] on Plaintiffs' Motion to Reconsider Breach of Contract Claim at Trial filed August 8, 2008 (Docket No. 64, 68) and Defendants' Motion to Reconsider Entry of Summary Judgment filed September 12, 2008 (Docket Nos. 86-90, 92).

## Background

Plaintiff Louis and Karen Metro Family, LLC ("Metro") is an Ohio LLC owned and operated by Louis and Karen Metro, who are both residents of Ohio.

---

[1]In their Case Management Plan filed March 30, 2007, the parties consented to Magistrate Judge jurisdiction in this case.  (Docket No. 15).  District Judge David Frank Hamilton entered an Order of Reference on April 3, 2007.  (Docket No. 16).

(First Amended Complaint ¶ 1).  Plaintiff Southern Ohio Pizza, Inc. ("SOP") is an Ohio corporation.  (*Id.* ¶ 2).  Defendant Lawrenceburg Conservancy District ("LCD" or "District") is a conservancy district created pursuant to Indiana statutes.  (*Id.* ¶ 3).  Defendant City of Lawrenceburg ("City") is a municipality located in Dearborn County, Indiana.  (*Id.* ¶ 4).

In 2000, the City and the LCD intended to begin a project known as the Westside Flood Protection Project (the "Levee Project"), which involved construction of a levee.  (Affidavit of Charles F. McNimery ("McNimery Aff.") ¶ 3).  Funding for the Levee Project was approved on December 21, 2000.  [*Id.* ¶ 4).  Part of the Levee Project included taking a parcel of land (the "Property") owned by Metro to be used for the construction of the levee.  (*Id.* ¶ 3).  In 2001, the LCD notified Metro that the LCD intended to acquire, through eminent domain, property located at 8-12 Beilby Road in Lawrenceburg, Indiana, for the Levee Project.  (Affidavit of Louis Metro ("Metro Aff.")).[2]

On March 21, 2001, the LCD sent Metro an acquisition offer for the Property.  (Defendants' Motion for Summary Judgment at Ex. 11 ("Acquisition Offer")).  The Acquisition Offer stated that the LCD offered Metro $417,000.00 for the Property.  (*Id.*)  On October 31, 2001, the LCD and Metro executed an

---

[2]At that time, Metro also owned a three-bay commercial building on the Property.  (Metro Aff. ¶ 3).  SOP leased one of the available spaces in that building and operated a Domino's Pizza franchise store at that location.  (*Id.*)  Both of the other leasable spaces were likewise occupied by tenants.

agreement for the purchase of the Property (the "Purchase Agreement").  (First

Amended Complaint at Ex. A).

     Under the Purchase Agreement, Metro agreed to convey land to the LCD in

exchange for $417,000.00.  (First Amended Complaint at Ex. A).  Paragraph 2 of

the Purchase Agreement contained the following provision:

> 2.  At the time of closing, which shall occur on or before
> November 30, 2001, District shall execute an irrevocable Option in
> favor of Metro wherein Metro shall have the right to purchase 0.827
> acres of the real estate described in Exhibit A and the adjoining
> 0.555 acres (formerly part of the Taylor property) for a purchase
> price of **Two Hundred Sixty-Nine Thousand Four Hundred Ninety
> ($269,490.00) Dollars**, which Option shall specify that the
> purchase shall be subject to a new easement in favor of District for
> the location, repair, maintenance and replacement of its facilities to
> be constructed on said real estate; a new easement in favor of City
> for the location, repair, maintenance and replacement of its new
> pumping station to be constructed on said real estate; existing
> easements for roads in favor of the State of Indiana; existing flowage
> easements in favor of the United States of America; other easements
> of record; and riparian rights of Tanner's Creek, and shall be
> exercisable for a period of **eighteen (18) months** commencing with
> the date written notice of Substantial Completion of the District's
> facilities is given by District to Metro by registered mail, certified
> mail, acknowledged facsimile, or acknowledged email transmission.
> The Option shall further stipulate that the property be excavated
> and left by the District in a reasonable manner to facilitate Metro's
> plans to rebuild a facility.

(*Id.*)  At the time of the Purchase Agreement, the LCD and the City intended to

use the Property for the construction of a levee for the Levee Project.  (McNimery

Aff. ¶ 3).  The Purchase Agreement contemplated an 18-month time frame in

which the levee would be built.  To that end, the Purchase Agreement provided

for temporary relocation expenses, including temporary lease premiums, to be

paid to SOP, and included an option for Metro to repurchase the Property ("the Option") at the conclusion of the Levee Project.  (First Amended Complaint at Ex. A).  Additionally, Louis Metro alleges that he was assured that the transfer of the Property was a temporary exchange, that a levee would be built, and that the process of building the levee would take approximately 18 months.  (Second Affidavit of Louis Metro ¶¶ 3-4).

Metro conveyed the Property to the LCD, by deed, on November 30, 2001. (Affidavit of Barbara Kaffenberger ("Kaffenberger Aff."); *see also* Defendants' Motion for Summary Judgment at Ex. 6 ("Warranty Deed")).  Metro's attorneys prepared the deed conveying the Property from Metro to the LCD.  (*See* Warranty Deed).

In accordance with the Purchase Agreement, also on November 30, 2001, the Chairman of the LCD executed an "Option for the Purchase of Real Estate" ("the Option Agreement").  (Second Amended Complaint at Ex. E).  The Option Agreement provided that:

> 3.  This Option shall be exercisable by Metro for a period of **eighteen (18) months** commencing with the date written notice of Substantial Completion of the District's facilities is given by the District to Metro by registered mail, certified mail, acknowledged facsimile, or acknowledged email transmission.

(*Id.*)  The Option Agreement itself does not explain the consequences of the LCD's failure to go through with the Levee Project.  (*See Id.*)  Metro's attorney reviewed and approved of the Option Agreement via email communication with counsel for

the LCD.  (Affidavit of William K. Ewan ¶¶ 4, 7).  Defendants allege that the original copy of the Option Agreement was provided to Metro at the closing on November 30, 2001.  (Affidavit of Naomi Ewan ¶¶ 5-6).[3]

SOP relocated its Domino's Pizza to a new location in Lawrenceburg. (Metro Aff. ¶¶ 6, 8).  And, SOP specifically negotiated an "early termination of lease" provision with its new landlord contemplating the temporary nature of the agreement between Metro and the LCD.  (*Id.* ¶ 8).

On January 28, 2002, a Resolution to Withdraw from the Levee Project was passed by the City Council for the City, which withdrew the funding for the project.  (McNimery Aff. ¶¶ 5-6; Defendants' Motion for Summary Judgment at Ex. 9 ("Resolution to Withdraw")).  The stated reason for the termination of the funding for the Levee Project was that the amount of acreage that would be made available for commercial development along the Ohio River was ultimately estimated at less than one-half of the original estimates.  (McNimery Aff. ¶ 6). This was due to the original estimates not taking into consideration existing power lines, retention ponds, 250 feet rights-of-way on both sides of a proposed road, and green spaces required by the Army Corps of Engineers.  (*Id.*)  The original estimate of acreage freed up for development was approximately 550 acres, and after taking into consideration the above mentioned factors, the net

---

[3]The existence of this Option Agreement was apparently not known by either Plaintiffs or Defendants' counsel at the time the parties' cross-motions for summary judgment were filed in this case.

acreage for development became approximately 170 acres.  (*Id.*)  The

Lawrenceburg City Council did not feel that the Project was economically feasible

since the cost of the Levee Project was estimated to be between $35 and $40

million dollars.  Thus, funding for the Levee Project was terminated.  (*Id.*;

Resolution to Withdraw).

Once it became clear that the LCD was not going to construct a levee on

the Property, Metro repeatedly and continuously attempted to contact the LCD

and/or its representatives regarding the status of the Levee Project and Metro's

Option.  (*See* Metro Aff. at Ex. B).  For over a year, the LCD completely ignored

Metro's calls and letters.  (Metro Aff. ¶ 10).  On August 31, 2005, the LCD

responded to Plaintiffs that the LCD had "abandoned its plans to construct the

levee contemplated by the Agreement."  (*Id.* ¶ 11).  After repeated attempts to

follow up on the Option Agreement, Metro finally received a letter from counsel

for the LCD on May 16, 2006, explaining that the Option was not exercisable

because the LCD had chosen not to build the levee.  (*Id.* ¶ 12).

On August 2, 2006, counsel for the LCD notified Plaintiffs that the

Property was being transferred to the City pursuant to an Interlocal Agreement

("IA") entered into by the LCD and the City (Metro Aff. at Ex. C), and that a park

was to be built on the Property.  (*Id.* ¶ 13).  Paragraph 4 of the IA purports to

transfer the LCD's rights and obligations in the Agreement to the City.  The LCD

and/or the City continued to refuse to permit Metro to exercise its Option to

repurchase the Property.  *(Id. ¶ 14).*  Metro has since learned that the City is now planning to use the Property for the construction of a bridge.  (Metro Aff. at Ex. D).

In late 2006, Plaintiffs filed suit claiming that Defendants "refused to allow Metro to exercise its Option."  (First Amended Complaint ¶ 31).  Plaintiffs asserted claims of breach of contract, fraud, and promissory estoppel, and also argued for punitive damages.  (First Amended Complaint).  Plaintiffs did not file a notice of tort claim with either the LCD or the City.  (Affidavit of Joseph W. Votaw III ¶ 3; Affidavit of Richard A. Butler ¶ 3).

Defendants filed their Motion for Summary Judgment arguing that Plaintiffs' breach of contract claim is barred by the doctrine of merger of deed. Defendants also argue that, in the alternative, the contract is unambiguous and that any option to repurchase the Property was subject to the condition precedent of building the levee; that Plaintiffs' fraud claim must be dismissed because fraud cannot be based on a future promise; and that government entities are usually not subject to claims of promissory estoppel.  Plaintiffs filed their Motion for Partial Summary Judgment claiming:  that the contract is ambiguous, must be construed in favor of Plaintiffs, and that parol evidence merits a finding in favor of Plaintiffs; that the doctrine of merger of deed does not bar recovery; and that Plaintiffs' promissory estoppel claim is warranted because of Plaintiffs' detrimental reliance.

On March 5, 2008, this court delivered its Entry on Cross-Motions for Summary Judgment.  (Docket No. 46).  The court in that Entry granted Lawrenceburg's Motion for Summary Judgment with regards to Count One (breach of purchase agreement) and Count Two (fraud).  However, the court determined that Metro's claim of equitable estoppel would survive summary judgment and remained a viable claim for trial.[4]

On July 10, 2008, Defendants' counsel discovered that the LCD had, in fact, executed the Option Agreement for the purchase of the real estate on November 30, 2001, in favor of Metro.  Defendants' counsel immediately sent a copy of the Option Agreement to Plaintiffs' counsel along with other documents.  (See Docket No. 57).  On July 14, 2008, Defendants moved for a pretrial

---

[4]A dispute has arisen in the parties' briefing on Defendants' Motion to Reconsider Entry of Summary Judgment concerning whether or not Plaintiffs have abandoned their claim of equitable estoppel.  Plaintiffs argue that Count Three of their Second Amended Complaint can be construed as a claim for equitable estoppel.  Given that the court has already determined that Plaintiffs' equitable estoppel claim survives summary judgment, the court is convinced that there is no reason why Plaintiffs would have abandoned that claim, and the court will give Plaintiffs the benefit of the doubt that they had intended to raise an equitable estoppel claim in Count Three.  Additionally, nothing in Defendants' Motion to Reconsider convinces the court that reconsideration of this portion of Plaintiff's' claim is necessary because the court has already concluded that the equitable estoppel claim was grounded in the parties' contract and that, in the light most favorable to Plaintiffs, Defendants had represented that "(1) a levee was going to be built; (2) that Metro was going to get to repurchase the Property once the levee was built; and (3) that if the Levee Project fell through, Metro would still have the option to repurchase the Property because the very reason that the LCD wanted the property would then cease to exist."  (Entry on Cross-Motions for Summary Judgment at 13-14).  Defendants have provided no new facts nor have they demonstrated that the court made an error of law regarding Plaintiffs' equitable estoppel claim.  Thus, Plaintiffs' claim of equitable estoppel remains for trial.

conference with the court seeking guidance as to how the parties should now proceed.

On July 31, 2008, a pretrial conference by telephone was held. The court issued an Order on August 8, 2008. (Docket No. 65). Among other things, the court determined that, as a result of the newly-discovered Option Agreement, the parties may need to amend their pleadings or move the court to reconsider its prior Order on Summary Judgment. (*Id.*)

On August 28, 2008, Metro filed Plaintiffs' Second Amended Complaint. Metro's Second Amended Complaint now alleges breach of the Purchase Agreement in Count One. In Count Two, Metro alleges a breach of the Option Agreement. Count Three alleges misrepresentation/promissory estoppel. And, Count Four alleges that Metro is entitled to punitive damages. On September 6, 2008, Defendants filed their Answer to Metro's Second Amended Complaint. Defendants' Answer raises new affirmative defenses that have not been previously addressed by the parties or the court and asserts new defenses to the newly alleged claims of Metro.

As a result of the discovery of the Option Agreement and the filing of Plaintiffs' Second Amended Complaint, both Defendants and Plaintiffs have filed fresh motions asking the court to reconsider its Entry on Cross-Motions For Summary Judgment. Plaintiffs simply seek to have the court revisit their breach of contract claims at trial. Defendants argue that Counts One, Two, Three, and Four of Plaintiffs' Second Amended Complaint must be dismissed.

Having discovered that an Option Agreement was, in fact, executed by the LCD, the court determines that reconsideration of the portion of its Entry on Cross-Motions For Summary Judgment granting summary judgment on Plaintiffs' breach of contract claim is necessary.  And, an examination of the parties' briefs reveals that the court must dismiss a portion of Count Three and Count Four of Plaintiffs' Second Amended Complaint.  Count Two remains for trial.  The portion of Count Three that can be construed as a promissory estoppel claim also remains for trial.

## Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and

draw all reasonable inferences therefrom in that party's favor.  *Id.* at 255.  If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999).  Lastly, the moving party need not positively disprove the nonmovant's case; rather, it may prevail by establishing the lack of evidentiary support for that case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## Analysis

In ruling on these cross-motions to reconsider the court's Entry on Cross-Motions for Summary Judgment, the court must make four determinations:

(1)   Is reconsideration of the court's Entry on Cross-Motions for Summary Judgment appropriate under these circumstances?

(2)   Do either of Plaintiffs' breach of contract claims remain for trial?

(3)   Is Plaintiffs' new claim of misrepresentation in Count Three viable?

(4)   Must Plaintiffs' punitive damages claim in Count Four and request for attorney's fees be dismissed?

**1.   The court must reconsider its Entry on Cross-Motions for Summary Judgment.**

Because Rule 54(b) of the Federal Rules of Civil Procedure permits the court to revisit judgments that are not final, the court may reconsider its previous Entry.  Rule 54(b) provides as follows:

> When more than one claim for relief is presented in an action,
> whether as a claim, counterclaim, cross-claim, or third party
> claim, or when multiple parties are involved, the Court may direct
> the entry of a final judgment as to one or more, but fewer than all
> of the claims for parties only upon an express determination that
> there is no just reason for delay and upon an express direction for
> the entry of judgment.  In the absence of such determination and
> direction, any order or other form of decision, however designated,
> which adjudicates fewer than all the claims or the rights and
> liabilities of fewer than all the parties shall not terminate the
> action as to any of the claims of parties and the order or other form
> of decision is subject to revision at any time before the entry of
> judgment adjudicating all the claims and the rights and liabilities
> of all the parties.

FED.R.CIV.P. 54.  Additionally, as the Seventh Circuit has confirmed, a district court clearly has the "inherent power to modify or rescind interlocutory orders prior to final judgment."  *Peterson v. Lindner,* 765 F.2d 698, 704 (7th Cir. 1985).

In this case, the court's Entry on Cross-Motions for Summary Judgment did not contain an express determination that there was no just reason for delay or an express direction for the entry of judgment, and it adjudicated fewer than all of Metro's claims.  Thus, under the specific language of Rule 54(b), this court's Entry on Cross-Motions for Summary Judgment is still subject to revision.

And, the court notes that in the Entry on Cross-Motions for Summary Judgment, we determined that "there has been no evidence presented by any party that suggests the Option referred to in the Purchase Agreement was drafted and presented to Metro at the time of closing . . . ."  (Entry on

-12-

Cross-Motions for Summary Judgment at 4).  However, since there is now evidence that an Option Agreement was, in fact, tendered by the LCD, the court concludes that reconsideration of its Entry on Cross-Motions for Summary Judgment is warranted.  The court will now take a second look at Plaintiffs' claims as they have been recast in Plaintiffs' Second Amended Complaint.  As was discussed previously in the court's Entry on Cross-Motions for Summary Judgment, Indiana's choice of law rules call for the application of Indiana law to this dispute.

**2.    The breach of contract claim under Count One of Plaintiffs' Second Amended Complaint must be dismissed, while the breach of contract claim under Count Two must be examined at trial.**

Count One of Plaintiffs' Second Amended Complaint asserts that the Purchase Agreement has been breached by the LCD's failure to follow through with its obligation to execute an Option.  However, the court notes that an Option Agreement was, in fact, executed by the LCD.  Because there are no genuine issues of material fact regarding whether the Option Agreement was executed, Count One of Plaintiffs' Second Amended Complaint must be dismissed.

Count Two of Plaintiffs' Second Amended Complaint alleges that Defendants breached the Option Agreement by failing to permit Metro to repurchase the Property at issue in this dispute.  Because a latent ambiguity exists in the Option Agreement, this issue must be resolved at trial.

With regard to the issue of ambiguity:

> Indiana follows the four corners rule, namely, that extrinsic
> evidence is not admissible to add to, vary, or explain the terms
> of a written instrument if the terms of the instrument are
> susceptible of a clear and unambiguous construction.  A
> document is not ambiguous simply because parties disagree
> about a term's meaning.  Language is ambiguous only if
> reasonable people could come to different conclusions as to its
> meaning.

*Cook v. Adams County Plan Com'n,* 871 N.E.2d 1003, 1007 (Ind.Ct.App. 2007).

There are two distinct types of ambiguities.  A patent ambiguity is apparent from
a look at the face of the contract; it arises from indefinite or confusing language
within the instrument itself.  *Simon Property Group, L.P. v. Michigan Sporting
Goods Distributors, Inc.,* 837 N.E.2d 1058, 1070-71 (Ind.Ct.App. 2005).  A latent
ambiguity, on the other hand, is not apparent until it becomes time to implement
the contract.  *Id.* at 1071.  A patent ambiguity raises a question of law, while a
latent ambiguity raises questions of fact that must be resolved by the fact finder.
*Id.*  And, extrinsic evidence is admissible in Indiana to resolve an ambiguity.
*University of Southern Indiana Foundation v. Baker,* 843 N.E.2d 528, 535 (Ind.
2006).

The facts surrounding this dispute clearly reveal a latent ambiguity.
Circumstances external to the face of the Option Agreement revealed that there
was no contemplation within the Option Agreement of what is to be done if the
Levee Project fell trough.  Only when the LCD abandoned the Levee Project and
refused to allow Metro to repurchase the Property did the ambiguity become

apparent.  In light of this latent ambiguity, we must look to extrinsic evidence, at trial, to resolve this ambiguity.

The court is aware of Defendants' additional argument that the Option Agreement violated the Rule Against Perpetuities.  However, because the Option Agreement is ambiguous, the court cannot ascertain the terms of the Option Agreement without hearing evidence at trial.  Only after a decision is made regarding the Option Agreement can the court determine whether or not the agreement violated the Rule Against Perpetuities.[5]  The court also concludes that further briefing may be appropriate before the court evaluates this unusual defense.

**3.     Plaintiffs' failure to file a tort claim notice requires dismissal of Plaintiff's misrepresentation claim.**

Defendants have raised several rationale for dismissing Count Three of Plaintiffs' Second Amended Complaint including:  (1) that Plaintiffs' claim of misrepresentation fails because Plaintiffs have failed to demonstrate facts sufficient to support a claim of misrepresentation; (2) that a claim of

---

[5]Additionally, Defendants should be mindful of the fact that, under certain circumstances, Indiana law permits a court to reform a contract that violates the Rule Against Perpetuities in the interests of equity "by inserting a savings clause that most closely preserves the transferor's plan of distribution and is within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created."  Ind. Code § 32-17-8-1.  This is a revelation of the Indiana General Assembly's intent to save certain contracts that violate the Rule Against Perpetuities.  Even if the court concludes, after hearing evidence on the issue of ambiguity, that the Option Agreement violates the Rule Against Perpetuities, the court might be placed in a situation where reformation of the contract is the most equitable solution.

misrepresentation is a tort, and that the claim is barred because Plaintiffs failed to timely file a Tort Claim Notice; and (3) that the claim is barred by the doctrine of immunity.  Because the court concludes that Plaintiffs neglected to timely file a Tort Claim Notice, the portion of Count Three alleging misrepresentation must be dismissed.

Count Three of Plaintiffs' Second Amended Complaint alleges, in part, that, by Defendants' actions of representing that Metro would be permitted to repurchase the Property, and by representing that SOP's move would only be temporary, Defendants committed the tort of fraudulent misrepresentation. Under Indiana law, notice of an allegation that such a tort has been committed must be filed within 180 days of the date the alleged loss occurred.  Such notice must be filed with the governing body of the political subdivision accused of committing the tort and the "Indiana political subdivision risk management commission . . . ."  Ind. Code § 34-14-3-8.  Plaintiffs have provided no evidence to the court that suggests that such notice was, in fact, provided.  Additionally, contrary to Plaintiffs' assertions, Defendants have not waived this argument.  It is true that Defendants have waited many months to raise the issue of the Tort Claims Notice.  However, "[b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses." *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 1999).  Therefore, the portion of Count Three of Plaintiffs' Second Amended Complaint alleging misrepresentation must be dismissed.

**4.     Plaintiffs' claims for punitive damages and attorney's fees fail.**

Plaintiffs also seek punitive damages in Count Four of their Second Amended Complaint.  However, Indiana law regarding punitive damages provides that when a party seeking punitive damages asserts both a tort claim and a breach of contract claim, the party must prove the independent tort in order to be entitled to an award of punitive damages.  *Tobin v. Ruman,* 819 N.E.2d 78, 86 (Ind.Ct.App. 2004).  In this case, Plaintiffs' tort claims have all been dismissed, and Plaintiffs are, therefore, not entitled to punitive damages under Indiana law.

Finally, Plaintiffs are also not entitled to attorney's fees.  Under Indiana law, unless there is specific statutory authority or a contractual agreement, each party pays its own attorney's fees.  *Indiana v. Carter,* 658 N.E.2d 618, 623-24 (Ind.Ct.App. 1995).  This is true unless a party acts in "bad faith."  However, Indiana law explains that, because this exception allowing attorney's fees in the event of "bad faith" is punitive in nature, Indiana does not allow such awards against the government.  *Id.*  Therefore, Plaintiff's claim seeking attorney's fees must also be dismissed.

## Conclusion

For the reasons outlined above, the parties' cross-motions to reconsider are **GRANTED**.  Having reconsidered the parties' motions for summary judgment, the revelation of the existence of an Option Agreement, and Plaintiffs' Second Amended Complaint, the court concludes as follows:  (a) Count One of Plaintiffs'

Second Amended Complaint is **DISMISSED**; (b) Count Two of Plaintiffs' Second Amended Complaint remains for trial; (c) the portion of Count Three alleging misrepresentation is **DISMISSED**; (d) Plaintiffs' claim of Equitable Estoppel remains for trial; and (e) Count Four of Plaintiffs' Complaint seeking punitive damages as well as Plaintiffs' claim for attorney's fees are **DISMISSED.**

       **SO ORDERED.**

**Dated:**  November 14, 2008

WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

Richard A. Butler
rabutler9@comcast.net

William C. Moyer
LORCH & NAVILLE, LLC
wmoyer@lorchnaville.com

Joshua Taylor Rose
FROST BROWN & TODD, LLC
jtrose@fbtlaw.com

Joseph Wilber Votaw III
VOTAW & KISOR
josephvotaw@earthlink.net

Susan Lynn Williams
FROST BROWN & TODD LLC
swilliams@fbtlaw.com